# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMUNDO QUEZADA,<br><br>　　　　Petitioner,<br>vs.<br><br>MARTIN BITER, Warden, et al.,<br><br>　　　　Respondents. | CASE NO. 13cv2961-GPC(DHB)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 15] |

## INTRODUCTION

Petitioner Raymundo Quezada ("Petitioner"), a state prisoner proceeding *pro se*, filed a First Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 4.) On July 14, 2014, Respondent filed an Answer with an attached Memorandum of Points and Authorities. (ECF Nos. 12-13.) On April 21, 2015, pursuant to 28 U.S.C. § 636(b)(1), Magistrate Judge David H. Bartick filed a Report and Recommendation ("Report") recommending the Petition be dismissed. (ECF No. 15.) After a thorough review of the issues and for the reasons set forth below, the Court **ADOPTS** the Magistrate Judge's Report and **DENIES** the Petition for Writ of Habeas Corpus.

//
//

# FACTUAL BACKGROUND[1]

On February 2, 2009, at approximately 10:30 a.m. or 10:45 a.m., Joshua Castrillon and his girlfriend, Silvia Arellano, left their home in Chula Vista in a dark gray, 2007 530i BMW to have breakfast at Rocky's restaurant in Pacific Beach. (ECF No. 13-31, Lodgment 12 at 3.[2]) Castrillon drove the BMW and Arellano sat in the front passenger seat. (Id.) The couple parked on Ingraham Street in front of the restaurant. (Id.) Shortly after, a Lincoln Navigator pulled up in front of them and three men—Ortiz, Martinez, and Petitioner—wearing dark clothes, gloves, and sweatshirts with hoods pulled over their heads, got out and approached the BMW. (Id.) Martinez, holding a gun, pushed Castrillon back into the car as he attempted to exit the vehicle, and over the center console into the back seat, directly behind the driver's seat. (Id.) Martinez then sat in the driver's seat. (Id.) Simultaneously, Ortiz prevented Arellano from opening the front passenger's door, ordered her to get back in, and shut her door. (Id.)

Petitioner entered the right rear passenger door and sat in the middle back seat. (Id.) Ortiz entered the vehicle and sat to the right of Petitioner, directly behind Arellano. (Id.) Martinez then drove the BMW south on Ingraham Street and told Arellano that if she did whatever he said, everything would be fine. (Id. at 3-4.) Ortiz asked Arellano for her cell phone and she accidentally handed him her iPod, which was then thrown out the window. (Id. at 4.) When Arellano reached back in her bag to find her cell phone, Ortiz placed a taser to her back and said, "make sure she's not dialing." (Id.) Arellano gave her purse to Ortiz and felt a taser sting her back. (Id.)

Paul Fatta, the owner of the restaurant adjacent to Rocky's, witnessed the incident and called 911. (Id.) He described the three men as Hispanic and wearing hooded sweatshirts and loose-fitting jeans. (Id.) Howard Spetter, a San Diego Police

---

[1] The facts are taken directly from the California Court of Appeal's decision. People v. Ortiz et al., 208 Cal. App. 4th 1354, 1359-62 (2012); (ECF No. 13-31, Lodgment 12 at 3-8).

[2] Citations to the First Amended Petition and the Answer are to pages assigned by the Court's Electronic Case Filing ("ECF") system.

Officer, responded to the dispatch, and then located, and began following, the carjacked BMW. (Id.) The BMW turned onto the eastbound I-8 freeway. (Id.) Martinez saw the police car following and told Arellano to "be cool" and "not . . . do anything stupid" if he got pulled over. (Id.) Petitioner spoke to someone on his cell phone and either he, or Ortiz, told Martinez to "[j]ust try not to get stopped by the police." (Id.)

San Diego Police Officer Elias Rodriguez, a tactical flight officer flying in the airborne law enforcement (ABLE) helicopter, also responded to a call of a possible carjacking. (Id.) He located a vehicle, matching the description given by the 911 caller, being followed by Spetter's patrol car at the intersection of Interstates 5 and 8. (Id.) The BMW, driven by Martinez, began driving slower than the speed limit and changing lanes, and then made an abrupt lane change across two lanes and exited onto Hotel Circle. (Id.) Spetter turned on his lights and siren and pursued the BMW. (Id.) The BMW went through a stop sign and accelerated to 90 miles per hour in a 35 mile per hour zone. (Id.) It then cut across traffic lanes, cut off numerous cars, and almost collided with other vehicles. (Id. at 4-5.) Martinez yelled, "Get ready," and threw his gun out the front passenger window. (Id. at 5.) He drove the BMW through a stop sign and entered eastbound I-8. (Id.) San Diego Police Officer, Lisa Hartman, joined Spetter in pursuing the BMW. (Id.)

Martinez cut across all traffic lanes and stopped on the left shoulder of the freeway's center divide. (Id.) Martinez, Ortiz, and Petitioner exited the BMW, jumped the concrete divider, ran across the westbound lanes, and climbed over a fence. (Id.) They ran through its parking lot and removed articles of clothing before running through the Motel 6 and out the back door near the San Diego River. (Id.) San Diego Police Sergeant Charles Lara drove into the Motel 6 parking lot and saw people pointing north. (Id.) He heard rustling noises in the bushes, and saw three men walking north, waist deep in the San Diego River. (Id.) The three men then complied with his order that they return to the riverbank. (Id.)

1 | Martinez was wearing a black shirt, Ortiz a white shirt, and Petitioner a black-hooded sweatshirt. (Id.) Officers found baseball caps, a jacket, and five gloves that Defendants had discarded on or near the Motel 6 property. (Id.) A $100 bill was found in the jacket's pocket. (Id.) Along the pursuit route, in the Hotel Circle area, the police found a loaded 9-millimeter Glock pistol, an unloaded Beretta pistol, a magazine, and bullets. (Id.)

Meanwhile, Spetter and Hartman approached Castrillon and Arellano in the BMW, and ordered Castrillon to get out. (Id.) Castrillon appeared terrified and Arellano was shaking, crying, and curled up in the fetal position. (Id.) Castrillon told Spetter he was the victim of a carjacking and Arellano confirmed that they were victims and not suspects. (Id. at 5-6.) Hartman found a pair of black gloves and a taser in Arellano's purse, which she denied were hers. (Id. at 6.) A $100 bill was missing from her purse. (Id.) Arellano was taken to the Motel 6 parking lot and identified Martinez as the man who threw the gun out and Petitioner as the man with the taser. (Id.) A police videotape showed Defendants leaving the BMW on the freeway. (Id.) Ortiz, wearing a white shirt, was sitting directly behind Arellano and got out of the BMW's right rear door first. (Id.)

On February 5, 2009, Castrillon told investigators he believed the kidnapping was the result of his failure to pay for a large amount of marijuana coming from Tijuana. (Id.) In 2008, Castrillon met Arturo Galarza, who introduced him to Daniel Jasso, an affiliate of Teodoro Garcia Simental, a former lieutenant in the Mexican drug cartel. (Id.) Castrillon agreed to organize the smuggling of 100 kilos of marijuana, worth $70,000 to $100,000, from Tijuana to the United States. (Id.) However, the marijuana never arrived and Castrillon was responsible for its $70,000 to $100,000 value. (Id.) He was afraid of Simental, Galarza, and Jasso. (Id.)

Castrillon lived with Arellano, who believed he owned a restaurant and lunch truck. (Id.) Arellano was unaware that Castrillon was involved in criminal activity and

never saw him with much money. (Id.) Arellano is a United States citizen with a Mexican law degree. (Id.) She worked for her father's business in Mexico. (Id.)

On February 9, 2009, police instructed Castrillon to make pretext calls to Jasso and Galaraza, who both denied their involvement in the kidnapping and told Castrillon he needed to pay his debt. (Id. at 7.) Both Galarza and Jasso were later arrested for kidnapping and carjacking Castrillon and Arellano. (Id.) Galarza admitted that he knew Castrillon and that Castrillon had been involved with Jasso in drug trafficking from Mexico to the United States. (Id.) He also stated that he knew Castrillon had taken the drugs and was responsible for their $100,000 value. (Id.) Galarza's white Lincoln Navigator was impounded and his home was searched. (Id.) One pound of cocaine and two pounds of marijuana were found in his garage, and one firearm was found in his home. (Id.) Jasso's home was also searched, and three firearms and five pounds of marijuana were found. (Id.)

## PROCEDURAL BACKGROUND

"In a five-count Second Amended Information filed in the San Diego County Superior Court on May 18, 2010, Petitioner and his co-defendants, Rafael Ortiz and Gustavo Martinez were charged with two counts of kidnapping during a carjacking in violation of California Penal code section 209.5 (counts one and two), and one count of evading an officer with reckless driving in violation of California Vehicle Code section 2800.2(a) (count 3).(Lodgment No. 2, Clerk's Tr. ["CT"] at 27-30.) Petitioner alone was charged with one count of possession of a firearm by a felon in violation of Penal Code section 12021(a)(1) (count four), and one count of allowing a concealed firearm to be carried in a vehicle in violation of Penal Code section 12025(a)(3) (count five). (Id.) The Information contained sentence enhancement allegations that Petitioner and Martinez personally used a handgun in committing counts one and two within the meaning of Penal code section 12022.53(b), and that Ortiz was vicariously liable as a principal for the use of a firearm in the commission of counts one and two within the meaning of Penal Code section 12022(a)(1). (Id.)

All three co-defendants were tried together with a single jury. On June 7, 2010, the jury returned guilty verdicts on all counts, and returned true findings on all sentence enhancement allegations. (CT 554-61.) On October 8, 2010, Petitioner was sentenced to life in prison plus four years. (CT 567.) His co-defendants also received life sentences. (CT 235, 832.)

Petitioner and his co-defendants filed a consolidated appeal, presenting, *inter alia*, the same claims presented here. (Lodgment Nos. 3-11.) The appellate court, in a published opinion, affirmed in all respects. People v. Ortiz et al., 208 Cal. App. 4th 1354 (Cal. Ct. App., Aug. 29, 2012). All three co-defendants thereafter filed a consolidated petition for review in the state supreme court presenting, *inter alia*, the claims raised

here. (Lodgment Nos. 13-15.) The petition was denied by an order that stated in full: 'The petitions for review are denied.' (Lodgment No. 16, People v. Ortiz, No. S205790 (Cal. Dec. 13, 2012).)"

(ECF No. 15 at 2-3.)

On March 20, 2014, Petitioner filed the present First Amended Petition ("FAP") on the same grounds previously raised in his state habeas petition. (ECF No. 4, FAP.) Petitioner challenges his San Diego Superior Court convictions of two counts of kidnapping during a carjacking, and one each of evading an officer with reckless driving, being a felon in possession of a firearm, and allowing a concealed firearm in a vehicle, along with jury findings that he was vicariously liable for his co-defendant's use of a handgun. (Id. at 1-2.) He claims, as he did in state court, that his federal Constitutional rights were violated because: (1) there is insufficient evidence to support the kidnapping during a carjacking convictions because there was no evidence the kidnappings facilitated the carjacking; (2) the jury was not instructed on the lesser included offense of simple kidnapping; (3) the jury was not instructed that kidnapping during a carjacking requires that the kidnapping must facilitate the carjacking, and is not committed if the carjacking is merely incidental to the kidnapping; and (4) the jury was not given a unanimity instruction regarding the gun possession crimes and gun use allegations. (ECF No. 15 at 2 (citing ECF No. 4, FAP at 6-9, 34-71, 94-112).)

On July 14, 2014, Respondent filed an Answer. (ECF Nos. 12-13.) Respondent argues that Petitioner's claim for habeas relief should be denied because Claims 2-4 do not present federal claims, and because the decisions of the state courts rejecting Petitioner's claims are not contrary to, nor an unreasonable application of United States Supreme Court precedent. (ECF No. 12-1 at 19-40.) Petitioner has not filed a Traverse.

## LEGAL STANDARD

The district court's role in reviewing a Magistrate Judge's Report and Recommendation is set forth in 28 U.S.C. § 636(b)(1). Under this statute, the district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings

or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. Campbell v. United States Dist. Court for Northern Dist. of Cal., 501 F.2d 196, 206 (9th Cir. 1974); Johnson v. Nelson, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001). Under such circumstances, the Ninth Circuit has held that "a failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*." Barilla v. Ervin, 886 F.2d 1514, 1518 (9th Cir. 1989) (citing Britt v. Simi Valley Unified Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983)).

## DISCUSSION

The Court received no objections to the Report and no request for an extension of the time in which to file any objections. Therefore, the Court assumes the correctness of the Magistrate Judge's factual findings and adopts them in full. The Court has conducted a *de novo* review of the Magistrate Judge's legal conclusions, independently reviewing the Report and all relevant papers submitted by both parties, and finds that the Report provides a correct analysis of the claims present in the instant Petition.

### A.  Standard of Review

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). The Supreme Court has stated that "[i]f this standard is difficult to meet, that is because it was meant to be . . . [as it] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. at 102-03 ("Section 2254(d) reflects the view that habeas corpus is a guard against

extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.") (internal quotation marks omitted).

In order to grant federal habeas relief, the court must determine that the state-court's application of clearly established federal law was objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 76 (2003). "Clearly established federal law, as determined by the Supreme Court of the United States, "refers to the holdings, as opposed to the dicta, of [Supreme] Court's decisions as of time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). Further, the court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, 538 U.S. at 75-76.

A person seeking federal habeas relief with respect to any claim that was adjudicated on the merits in state court must show that the state court adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision may be "contrary to" clearly established Federal law "if the state court (1) arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or (2) decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 364-65. A state court decision may involve an "unreasonable application" of Supreme Court law under § 2254(d)(1) "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 365. However, relief under § 2254(d)(1)'s "unreasonable application" clause may be granted "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could

be no 'fairminded disagreement' on the question." White v. Woodall, 134 S.Ct. 1697, 1706-07 (2014) (quoting Richter, 562 U.S. at 103). Lastly, under § 2254(d)(2), a state court decision based on a factual determination may involve an "unreasonable determination of the facts" if the state courts' decision is "objectively unreasonable in light of the evidence presented in the state court proceedings." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

However, even if § 2254(d) is satisfied or proved inapplicable, a petitioner must still demonstrate that a federal constitutional violation occurred. Fry v. Pliler, 551 U.S. 112, 119-22 (2007); Frantz v. Hazey, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc). The petitioner must also establish that the constitutional error asserted is not harmless, unless the error is of the type included on the Supreme Court's "short, purposely limited roster of structural errors." Gautt v. Lewis, 489 F.3d 993, 1015 (9th Cir. 2007).

Lastly, the Court notes that Petitioner presented these same claims to both the state appellate court, which denied each claim on its merits, and the state supreme court, which denied the petition summarily. (ECF No. 13, Lodgment Nos. 3-4, 12, 14, 16.) As such, the Court adopts a presumption giving no effect to unexplained state orders, and "looks through" the silent denial of the petition by the state supreme court to the appellate court opinion in considering each claim. See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).

**B.     Claim 1: Sufficiency of the Evidence to Support Petitioner's Conviction for Kidnapping during a Carjacking**

Petitioner argues that his convictions under counts 1 and 2 of kidnapping "in order to facilitate a carjacking" violate his federal constitutional right to due process because there was insufficient evidence to establish that the kidnapping was done to facilitate the carjacking. (ECF No. 4, FAP at 53.) Petitioner argues that the language of California Penal Code section 209.5 "requires that the evidence show the ancillary crime (kidnapping) was not merely committed at the same time or near the same time of the target crime (carjacking); but the ancillary crime must be committed 'in order to

1  facilitate' the target crime." (Id. at 60 (citing Cal. Penal Code § 209.5).) As such,
2  Petitioner asserts that the kidnapping of Arellano and Castrillon was the only criminal
3  objective and therefore, that the carjacking was merely incidental to the kidnapping,
4  as the BMW was "merely used to transport Arellano and Castrillon." (Id. at 54.)

5  Respondent answers that the jury could reasonably infer from the circumstances
6  that Petitioner, and his co-defendants, acted for the dual purposes of kidnapping the
7  victims and taking the BMW. (ECF No. 12-1, Ans. Mem., at 25.) Respondent asserts
8  that Defendants could have intended to hold the victims for ransom and use the value
9  of the late-model BMW to pay off Castrillon's drug debt. (Id. at 29.) Therefore,
10 Respondent argues that the California Court of Appeal correctly found that "the jury
11 could reasonably infer from all the evidence that [Petitioner] and his co-defendants
12 kidnapped Castrillon and Arellano to facilitate the carjacking." (Id. at 25.)

13 After review, the Court finds that the Magistrate Judge correctly analyzed the
14 claim under the due process standard to conclude that the state court's adjudication of
15 Claim 1 was neither contrary to, nor an unreasonable application of, clearly established
16 federal law, and is not based on an unreasonable determination of the facts. A
17 petitioner's right to due process is violated, and he is entitled to federal habeas relief,
18 "if it is found that upon the record evidence adduced at the trial no rational trier of fact
19 could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443
20 U.S. 307, 324 (1979). Jackson claims must be analyzed "with explicit reference to the
21 substantive elements of the criminal offense as defined by state law." Id. at 324 n.16;
22 see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("A state court's interpretation
23 of state law . . . binds a federal court sitting in habeas corpus"). Further, with respect
24 to habeas petitions filed after April 24, 1996, to which the Anti-Terrorism and Effective
25 Death Penalty Act ("AEDPA") applies, the Court must apply the Jackson standards
26 "with an additional layer of deference," and can only grant relief if the state court's
27 decision was objectively unreasonable. Juan H. v. Allen, 408 F.3d 1262, 1270, 1274
28 (9th Cir. 2005). The Court must determine whether the appellate court's decision

1  "reflected an unreasonable application of Jackson and Winship to the facts of this case." Id. at 1275.

Here, Defendants likely had multiple opportunities to kidnap the victims without taking the BMW, either at their home or in the Lincoln Navigator used to transport Defendants. (See ECF No. 13-31, Lodgment 12 at 3.) Further, after Defendants had taken control of the BMW, they then prevented the victims from seeking help by keeping them in the car and taking Arellano's cell phone and purse. (Id. at 4.) Based on this evidence, the Court finds the jury could reasonably have inferred that Defendants intended to steal the BMW and kidnapped the victims to facilitate the carjacking, especially in light of the fact that the proceeds from holding the victims for ransom and selling the BMW could have been used to pay Castrillon's drug debt. Therefore, the Court finds there is substantial evidence to support Petitioner's convictions of counts 1 and 2 and that the state court's decision was not objectively unreasonable.

Accordingly, the Court concludes that the state court's adjudication of Claim 1 does not violate Petitioner's federal constitutional right to due process and **DENIES** habeas relief as to Claim 1.

### C. Claim 2: Failure to Instruct the Jury on the Lesser Included Offense of Simple Kidnapping

Petitioner argues that the trial court's failure to instruct the jury on the lesser included offense of simple kidnapping violated his federal constitutional right to due process. (ECF No. 4, FAP, at 34-52.) Petitioner asserts that the trial court instructed the jury on the crimes of kidnapping during a carjacking (§ 209.5), carjacking, and felony false imprisonment as lesser included offenses, but incorrectly found that simple kidnapping was not a lesser included offense of kidnapping during a carjacking. (Id. at 34.) Petitioner argues that the jury should have been given a simple kidnapping instruction. (Id. at 35.) Petitioner asserts that "because a more favorable outcome is a reasonable probability, and because the penalty for the lesser offenses of simple

kidnapping and carjacking are determinate terms, versus [Petitioner's] current sentence of an indeterminate life term, prejudice is manifest from the record on appeal and reversal and remand are required." (Id.)

Respondent answers that this claim is not cognizable on federal habeas review because the claim is based on the interpretation of state law. (ECF No. 12-1, Ans. Mem., at 27.) Respondent asserts that the failure to instruct the jury on a lesser included offense in a non-capital case does not present a federal constitutional issue. (Id.) Respondent argues that under California law, an instruction on a lesser-included offense is only required if there is sufficient evidence to justify a conviction under the lesser offense. (Id. at 21.) Accordingly, Respondent asserts that because there was no evidence that the offense was less than that charged, an instruction for simple kidnapping was not required. (Id. at 22.) Therefore, Respondent asserts that the state court's failure to instruct the jury on the lesser included offense of simple kidnapping was not contrary to, nor an unreasonable application of, clearly established Federal law. (Id.)

After review, the Court finds that the Magistrate Judge correctly analyzed the claim under the due process standard to conclude that the state court's adjudication of Claim 2 was neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. To make a claim for habeas relief based on a state court's failure to instruct the jury on a lesser included offense, a petitioner must show that the lesser offense is consistent with his theory of defense, supported by law, and has some foundation in the evidence. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) ("The refusal by a court to instruct a jury on lesser included offenses, when those offenses are consistent with defendant's theory of the case, may constitute a cognizable habeas claim"); United States v. Fejes, 232 F.3d 696, 702 (9th Cir. 2000) ("A defendant is entitled to have the judge instruct the jury on his theory of defense provided it is supported by law and has some foundation in the evidence").

First, Petitioner has not demonstrated that an instruction on the lesser included offense of simple kidnapping was necessary to this theory of defense. Petitioner's defense was that there was no kidnapping or carjacking, as the defendants were merely escorting Castrillon and Arellano to complete the drug deal, and/or that the kidnapping and carjacking were a ruse, as Castrillon, and perhaps Arellano, were complicit in a plot to extort money from Arellano's wealthy parents under the guise of a kidnapping. Instead, Petitioner asserts that a simple kidnapping instruction would produce a reasonable probability of "a more favorable outcome on retrial." (See ECF No. 4, FAP, at 50.) Second, as previously discussed, the evidence was sufficient to support the jury's finding that the kidnapping was done to facilitate the carjacking, and therefore, did not support a theory of simple kidnapping. Thus, as the instruction on the lesser included offense of simple kidnapping was not necessary to Petitioner's theory of defense and had little, if any, foundation in the law and evidence, the state court's failure to instruct the jury on the lesser included offense of kidnapping was not contrary to, or an unreasonable application of, clearly established federal law.

Further, any possible error caused by the state court's failure to instruct the jury as requested by Petitioner was likely harmless. See Padilla v. Terhune, 309 F.3d 614, 621-22 (9th Cir. 2002) ("An error is harmless unless the record review leaves the conscientious judge in grave doubt about the likely effect of an error on the jury's verdict . . . (i.e.,) that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error"). While the jury was not instructed on the lesser-included offense of simple kidnapping, they were instructed on the lesser-included offenses of carjacking and false imprisonment. (ECF No. 13-31, Lodgment 12 at 14.) The jury subsequently rejected both lesser-included offenses to find Petitioner guilty of kidnapping during a carjacking, indicating that they likely would have also rejected simple kidnapping. Therefore, the Court finds the trial court's failure to instruct on the lesser-included offense of simple kidnapping did not have a

1  "substantial and injurious effect or influence in determining the jury's verdict." See
2  Brecht v. Abrhamson, 507 U.S. 619, 637 (1993) (citation omitted).
3      Therefore, for the reasons stated, the Court finds the state court's adjudication
4  of Claim 2 does not violate Petitioner's federal constitutional right to due process and
5  **DENIES** habeas relief as to Claim 2.
6  **D.    Claim 3: Failure to Instruct on the Requirement of Purpose to Facilitate**
7      **a Carjacking for the Offense of Kidnapping During a Carjacking**
8      Petitioner argues that his federal constitutional right to due process was violated
9  by the trial court's failure to instruct the jury that kidnapping during a carjacking
10  requires that the purpose of the kidnapping was to facilitate the carjacking, and is not
11  committed if the carjacking is merely incidental to the kidnapping. (ECF No. 4, FAP
12  at 4, 31.) Petitioner asserts that the he was hired to kidnap the victims from an outside
13  source and that the carjacking was only incidental to the kidnapping. (Id.) He states that
14  his only "intent was to kidnap [the victims] due to a bad drug deal gone wrong." (Id.)
15      Respondent answers that this claim should be denied because an instructional
16  error is not a federal claim. (ECF No. 12-1, Ans. Mem., at 32.) Respondent argues that
17  to establish a violation of due process, an instructional error must relieve the jury of
18  finding an element of the offense, alter the burden of proof, or otherwise create a
19  reasonable likelihood that the jury applied the instruction in a way that violated the
20  Constitution. (Id. at 33 (citations and quotations omitted).) Respondent asserts that the
21  "trial court's instruction clearly set forth all the elements of a [kidnapping during a
22  carjacking], including the requirement that the kidnapping be done to facilitate the
23  carjacking." (Id. at 34.) Lastly, Respondent asserts that to "have instructed that the
24  carjacking must be more than incidental to the kidnapping [would not be an] accurate
25  statement of law." (Id.) Therefore, Respondent argues "there is nothing showing a
26  violation of federal constitutional law." (Id. at 24.)
27      After review, the Court finds that the Magistrate Judge correctly analyzed the
28  claim under the due process standard to conclude that the appellate court's adjudication

of Claim 3 is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. To determine whether an instructional error constitutes a violation of due process, the court must determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id. Lastly, the instruction cannot be merely "undesirable, erroneous, or even 'universally condemned,'" but must violate some constitutional right." Id.

As previously discussed, the jury was provided sufficient evidence to support their conclusion that the kidnapping was done to facilitate the carjacking. In taking control of the BMW, Defendants prevented the victims from seeking help by taking Ms. Arellano's cell phone and holding a taser to her neck. (ECF No. 13-31, Lodgment 12, at 4.) Further, Defendants likely had multiple opportunities to kidnap the victims without taking the BMW, either from their home or in the Lincoln Navigator used to transport Defendants. (See id. at 3.) From this evidence, the jury could reasonably have inferred that Defendants intended to use the BMW, and possibly the victims in exchange for ransom, to pay Castrillon's significant drug debt. As such, the jury could reasonably have determined, and did so find, that the kidnapping facilitated the carjacking and accordingly, that the carjacking was not merely incidental to the kidnapping. Therefore, as the jury's finding indicates they did not believe the carjacking was incidental to the kidnapping, the Court concludes that the trial court's failure to instruct the jury, as requested by Petitioner, did not "by itself so [infect] the entire trial that the resulting conviction violates due process." See Estelle, 502 U.S. at 72 (citation omitted).

Further, for the same reasons, the Court finds any possible error caused by the trial court's failure to instruct the jury as requested by Petitioner was harmless. See

Padilla, 309 F.3d at 621-22 ("An error is harmless unless the 'record review leaves the conscientious judge in grave doubt about the likely effect of an error on the jury's verdict . . . (i.e.,) that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error"). The jury was presented sufficient evidence to support, and did find, that the kidnapping facilitated the carjacking and therefore, that the carjacking was not merely incidental to the kidnapping. As such, the Court sees no indication that the jury's decision would have been different if instructed as requested by Petitioner. Accordingly, the Court finds that the instructional error alleged in Claim 3 could not have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

Therefore, for the reasons stated, the Court finds the state court's adjudication of Claim 3 does not violate Petitioner's federal constitutional right to due process and **DENIES** habeas relief as to Claim 3.

### E.   Claim 4: Failure to Give the Jury a Unanimity Instruction

Petitioner asserts that the trial court's failure give the jury a *sua sponte* unanimity instruction regarding the gun possession crimes and gun use allegations violated his federal Constitutional right to due process. (ECF No. 4, FAP, at 9.) Petitioner asserts that the evidence was conflicting regarding whether he actually or constructively possessed a firearm, and that the jury may have returned its verdict without unanimous agreement on a specific act or theory of possession. (Id.)

Respondent answers that the claim is not a federal one and should be denied. (ECF No. 12-1, Ans. Mem., at 35.) Respondent argues that, regardless, "a jury is not required to reach a unanimous agreement with regard to which overt act or omission satisfies the actus reus requirement for the offense charged." (Id. at 35 (citations omitted).) Respondent asserts that both counts 4 (possession of a firearm by a felon), 5 (carrying a firearm in a vehicle), and the firearm enhancements as to counts 1 and 2 resulted from a single continuous act, of either constructive or actual possession of a gun in committing the crime of kidnapping during a carjacking. (ECF. No. 12-1, Ans.

Mem., at 39.) Respondent argues that "if the jury believed that [Petitioner] was in possession, regardless of how, then the [unanimity] instruction is not necessary because the type of possession merely presented the jurors with different theories about the *manner* in which the offense was committed." (Id. at 40 (citation omitted).)

After review, the Court finds that the Magistrate Judge correctly analyzed the claim under the due process standard to conclude that the appellate court's adjudication of Claim 4 is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. First, even if the jury did not reach a unanimous decision as to whether he actually or constructively possessed a handgun or taser, Petitioner, as a state criminal defendant, does not have a federal constitutional right to a unanimous jury verdict. See Apodaca v. Oregon, 406 U.S. 404, 406 (1972); Johnson v. Louisiana, 406 U.S. 356, 363 (1972). However, Petitioner may still establish a federal due process violation if he can show that the trial court's failure to give the unanimity instruction "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).

In agreement with Petitioner, the state appellate court stated that:

> "there is evidence from which jurors could have reasonably inferred [Petitioner] either: (1) actually possessed a gun; (2) actually possessed a taser; (3) constructively possessed Martinez' gun; or (4) constructively possessed Ortiz' taser. However, as the People argue, those separate 'acts' did not constitute multiple discrete crimes or firearm allegations, but rather multiple 'theories' of a single discrete crime or allegation."

(ECF No. 13-31, Lodgment 12 at 29.) As such, the state appellate court concluded that "the jurors were not required to unanimously agree on the particular act or acts [Petitioner] did in committing each of those single discrete crimes and allegations." Id. at 30.

The Court agrees with the state appellate court that the jury was not required to unanimously agree on a single theory, of either actual or constructive possession of a firearm, for each discrete crime or allegation. See People v. Russo, 25 Cal. 4th 1124, 1132 (2001.) "Where the evidence shows only a single discrete crime but leaves room

for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or the 'theory' whereby the defendant is guilty." Id. (citations omitted).

Here, the jury was presented with sufficient evidence that Petitioner was either actually or constructively armed with a taser or handgun while committing the crimes charged. Arellano stated that Martinez pushed Castrillon at gun point back into the BMW in front of the restaurant. (ECF No. 13-31, Lodgment 12 at 3.) Following this, she states that she felt a taser sting her back as she searched for her cell phone. (Id. at 4.) She states that the taser, later found in her purse, belonged to Petitioner, whom she identified in Court and at the curbside line up as the man sitting behind her in the vehicle and in possession of the taser. (Id. at 6.) Arellano also stated that she saw Martinez throw his gun out the front passenger window. (Id. at 5.) Police later found a 9-millimeter glock pistol, an unloaded Beretta pistol, a magazine, and bullets along the pursuit route in the Hotel Circle area. (Id.)

The Court finds the jury was presented with evidence of a single discrete crime, kidnapping during a carjacking, and from this evidence, could reasonably have found that Petitioner was either constructively or actually armed while committing this crime. Therefore, in accordance with Russo, the jury was not required to unanimously agree on a single theory of possession for each discrete crime in order to convict Petitioner on the counts challenged. See Russo, 25 Cal. 4th at 1132. As such, and given the sufficiency of the evidence presented, the trial court's failure to give a unanimity instruction in this regard could not have "so infected the entire trial that the resulting conviction violates due process." See Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).

Therefore, for the reasons stated, the Court finds the state court's adjudication of Claim 4 does not violate Petitioner's federal constitutional right to due process and **DENIES** habeas relief as to Claim 4.

//

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Federal Rules Governing Section 2254 Cases states, "[t]he district court must issue or deny a certificate of APPEALABILITY when it enters a final order adverse to the applicant." A certificate of APPEALABILITY should be issued only where the petition presents "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of APPEALABILITY "should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Based on the Court's review of the Petition, the Court finds no issues are debatable among jurists of reason and that no jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See id. Accordingly, the Court **DENIES** certificate of APPEALABILITY.

## CONCLUSION

Based on the above, the Court **ADOPTS** the report and recommendation of the Magistrate Judge and **DISMISSES** the petition for the writ of habeas corpus with prejudice. The Court also **DENIES** a certificate of APPEALABILITY. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

DATED: December 21, 2015

HON. GONZALO P. CURIEL
United States District Judge